1

2

3                                                          O

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  COMPASS BANK                )    Case Nos. EDCV 11-00871 VAP
                                )    (DTBx), **EDCV 11-01201 VAP**
12                 Plaintiff,   )    **(OPx)**
                                )
13       v.                     )
                                )    **ORDER GRANTING COMPASS**
14  CHRIS M. PETERSEN, et       )    **BANK'S MOTION FOR PARTIAL**
    al.                         )    **SUMMARY JUDGMENT (11-0871,**
15                              )    **DOC. NO. 211) AND MOTION FOR**
                   Defendants.  )    **SUMMARY JUDGMENT (11-01201,**
16  _____  )    **DOC. NO. 106); AND DENYING**
                                )    **DEFENDANTS' MOTIONS FOR**
17  CHRIS M. PETERSEN, et       )    **SUMMARY JUDGMENT (11-0871,**
    al.                         )    **DOC. NOS. 147, 158)**
18                              )
                   Plaintiffs,  )
19                              )
         v.                     )
20                              )
    ROUNDPOINT MORTGAGE         )
21  SERVICING CORP., et al.     )
                                )
22                 Defendants.  )

23

24

25       Before the Court is one motion for summary judgment

26  filed by Defendants Compass Bank and Roundpoint Mortgage

27  Servicing Corporation ("Roundpoint") against Plaintiffs

28  Christopher and Carolina Petersen (case number 11-01201),

    and three motions for summary judgment in Compass Bank's

counter-lawsuit (case number 11-00871), one filed by
Plaintiff Compass Bank; one filed by Defendants
Christopher Petersen, Carolina Petersen, and CP Financial
and CP Realty, I nc. ("CP") ("Petersen Parties,"
collectively), and one filed by Defendant Strunzo
Development Corporation ("Strunzo").

## I.   BACKGROUND

**A.   Procedural History**

On February 17, 2011, Christopher and Carolina
Petersen filed a Complaint in the San Bernardino County,
California, Superior Court against Compass Bank and
Roundpoint, a loan servicer, to prevent a foreclosure
sale of their property located at 27311 Peninsula Drive,
Lake Arrowhead, California 92352 ("Property").  (See Not.
of Removal, Ex A (Case No. 11-01201, Doc. No. 1.)
Compass Bank responded with a lawsuit filed in this Court
on June 3, 2011, against the Petersens, CP, and Strunzo.
(Complaint (Case No. 11-00871, Doc. No. 1).)

Having postponed foreclosure on the Property, the
Petersens on March 23, 2012, filed their presently
operative complaint against Compass Bank and Roundpoint,
alleging claims for declaratory judgment, accounting,
unjust enrichment, and equitable estoppel.   (Second
Amended Complaint ("SAC")(Case No. 11-01201, Doc. No. 47-
1).)

On September 21, 2011, Compass Bank filed its presently operative complaint against the Petersen Parties and Strunzo, alleging the following claims on which Compass Bank now moves for summary judgment:

1. Cancellation of instruments (against all Defendants);

2. Setting aside substitution of trustee and full reconveyance (against all Defendants);

3. Declaratory relief (against all Defendants);

4. Quiet title (against all Defendants);

5. Fraud (against Petersen Parties); and

6. Slander of title (against Petersen Parties); (First Amended Complaint ("FAC") (Case No. 11-00871, Doc. No. 6).)[1]

The Court denied Strunzo's motion to dismiss Compass Bank's complaint on November 9, 2011 (Case No. 11-00871, Doc. No. 19); and, in the related action, granted in part and denied in part Compass Bank's motion to dismiss the Petersens' complaint on May 7, 2012. (Case No. 11-01201, Doc. No. 57.)

---

[1] The FAC sets forth the following additional claims not included in Compass Bank's Motion for Partial Summary Judgment: judicial foreclosure, unjust enrichment, suit on the note, equitable lien, equitable subrogation, and breach of contract.

1        In June and July 2012, the parties filed multiple

2   motions for summary judgment that have been mooted or

3   deemed withdrawn because of procedural or technical

4   deficiencies.  (<u>See</u> June 26, 2012, Minute Order (11-

5   00871, Doc. No. 143); July 19 Minute Order (11-00871,

6   Doc. No. 211.) The following are the final documents

7   filed in both actions presently before the Court:

8   <u>Case No. 11-00871</u>

9   1.  Plaintiff Compass Bank's Motion for Partial Summary

10       Judgment (Doc. No. 211)

11       a.  Defendants Petersen Parties' Opposition (Doc.

12           No. 214)

13       b.  Defendant Strunzo's Opposition (Doc. No. 195)

14       c.  Plaintiff Compass Bank's Reply (Doc. No. 220)

15  2.  Defendant Strunzo's Motion for Summary Judgment (Doc.

16       No. 147)

17       a.  Plaintiff Compass Bank's Opposition (Doc. No.

18           171)

19       b.  Defendant Strunzo's Reply (Doc. Nos. 194, 196)[2]

20  3.  Defendants Petersen Parties' Motion for Summary

21       Judgment (Doc. No. 158)

22

23

24  ─────────────

        [2] Strunzo filed the same Reply at docket numbers 194
25  and 196, stating on the docket that they are both related
    to summary judgment motions filed by Strunzo.  The Reply
26  at docket number 196 is correctly labeled and is thus
    relied on by the Court; the Reply at docket number 194 is
27  mislabeled as it relates to the Petersen Parties' motion
    (Doc. No. 158), not Strunzo's (Doc. No. 147), and thus is
28  not relied on by the Court.

a.   Plaintiff Compass Bank's Opposition (Doc. No. 183)

b.   No Reply filed

Case No. 11-01201

4.   Defendant Compass Bank's Motion for Summary Judgment (Doc. No. 106)

a.   Plaintiffs Petersens' Opposition (Doc. No. 108)

b.   Defendant Compass Bank's Reply (Doc. No. 115)

## II. FACTS

**A.   Uncontroverted Facts[3]**

---

[3] Many of the uncontroverted facts here are derived from Compass Bank's Requests for Admissions propounded to the Petersen Parties and served on May 8, 2012. (See Watson Decl., Exs. A-C (Case No. 11-00871, Doc. No. 168.) The Petersen Parties failed to respond to these requests within 30 days (by June 7, 2012), as required by Federal Rule of Civil Procedure 36(a)(3). Compass Bank notified the Petersen Parties on June 22, 2012, that the propounded admissions were deemed admitted. (See id., Ex. D.) Unanswered requests for admission are deemed admitted by Rule 36(a)(3) and "may be relied on as the basis for granting summary judgment." Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007). The Court finds such reliance appropriate here, except to the extent that the Requests for Admissions are not binding as to facts involving Defendant Strunzo. Accord Riberglass, Inc. v. Techni-Glass Indus., Inc., 811 F.2d 565, 566 (11th Cir. 1987). The Court does, however, rely on the Petersen Parties' admissions regarding events to which Strunzo was not a party or which preceded Strunzo's involvement in this matter.

In addition to the admitted facts described herein, the Petersen Parties also admit to the "genuiness" of the copies of the original HTFC Note, the HTFC Deed of Trust, the allonge, and the loan modification agreement attached to the Watson Declaration as exhibits A-C(A), A-C(B), A-C(C), and A-C(D), respectively. (See Watson Decl., Exs. 
(continued...)

5

The following material facts are supported adequately by admissible evidence and are uncontroverted.[4]  They are "admitted to exist without controversy" for the purposes of these motions.  See L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

In 2005, the Petersens purchased the Property via grant deed.  (SAC ¶ 9.)  In October 2007, the Petersens obtained a refinance loan in the amount of $1,760,200.00 at a 9.375% interest rate ("Note" or "HTFC Note") secured by a Deed of Trust against the Property (collectively, the "Subject Loan").  Christopher Petersen met with the owner of the New York-based HTFC Corporation about obtaining a loan, but, because HTFC was not licensed to lend in California, HTFC table funded[5] the $1.76 million

---

[3](...continued)
A-C at 6-7.)

[4] To the extent any facts submitted by the parties are not mentioned, the Court has not relied on them in reaching its decision.  Additionally, as the Court does not rely on evidence challenged in either parties' Objections to Evidence, the Court does not rule on those objections.

[5] "Table funding occurs when a transaction is
(continued...)

6

loan to Chris Petersen's company, CP. (Wider Decl. (Doc. No. 189), ¶¶ 1-5; SAC ¶ 12). Christopher Petersen is President and Chairman of CP, a mortgage and real estate company. (Decl. of Christopher Petersen, Vol. I, 18:7-19:23.) He and his wife, Carolina Petersen, are the only two CP shareholders and employees. (Id. at 18:14-17, 22:16-20.)

CP, named as "Lender," then loaned the HTFC funds to the Petersens as "Borrowers." (SUF ¶ 1; Christopher Petersen Decl. ¶ 6; SAC ¶ 12; Requests for Admissions ("RFA")[6] ¶ 1.) Mortgage Electronic Systems, Inc. ("MERS") was nominated as the beneficiary under the Deed of Trust. (SUF ¶ 2; Compass Bank Request for Judicial Notice ("Compass Bank RJN" (Doc. No. 169)), Ex. 6.)

On October 30, 2007, CP transferred the Subject Loan via an allonge executed by CP employee Andrea Carter to HTFC, as authorized by the Petersens. (RFA ¶¶ 3-6.) As of that transfer on October 30, 2007, CP has had no

---

[5](...continued)
consummated with the debt obligation initially payable by its terms to one person, but another person provides the funds for the transaction at consummation and receives an immediate assignment of the note, loan contract, or other evidence of the debt obligation." Regulation Z Commentary, 12 CFR Part 226 Supp. I, Comm. 36(a)-1.

[6] Unless otherwise noted, "RFA" and the citation pincites refer to all the requests for admissions propounded to Christopher Petersen, Carolina Petersen, and CP.

1   beneficial interest in the Subject Loan and none of the

2   Petersen Parties have possessed the original HTFC note.

3   (RFA ¶¶ 7-9.)

4

5       The Petersens sent their payments on the Subject

6   Loan along with the original HTFC Note to HTFC

7   immediately after the loan funded.  (SUF ¶ 13; RFA ¶¶ 2-

8   3.)  When the Subject Loan funded and transferred to

9   HTFC, the Subject Loan was purchased by Guaranty Bank via

10  a Mortgage Loan Purchase Agreement.  (SUF ¶ 9; Wider

11  Decl. ¶ 6, Ex. B.).  After the purchase, the Petersens

12  made payments to Guaranty Bank on the Subject Loan,

13  attempted a short sale to Guaranty Bank, and executed a

14  Loan Modification Agreement with Guaranty Bank on June

15  18, 2009, though Guaranty Bank never implemented it.[7]

16

17  _____

         [7] The Petersen Parties argue that the Loan
18  Modification Agreement with Guaranty Bank is inadmissible
    evidence under sections 1152 and 1154 of the California
19  Evidence Code, which govern "offers to compromise" and
    "offer to discount a claim," respectively.  (See Petersen
20  Parties Opp'n at 6-7.)  The California Evidence Code does
    not apply in this Court.  Furthermore, the Court finds
21  the Loan Modification Agreement is not inadmissible under
    the Federal Rules of Evidence because any alleged
22  settlement communications made by the Petersen Parties
    are not being introduced by Compass Bank to prove that
23  the Petersen Parties are liable for the same claims that
    were the subject of the settlement communications.  See
24  Monex Deposit Co. v. Gilliam, 680 F. Supp. 2d 1148, 1155
    (C.D. Cal. 2010).  That is, the evidence is not offered
25  to prove that the Petersens were in default on their
    debt; it is offered to prove that Guaranty Bank was the
26  beneficial owner of the Subject Loan at that time.  In
    addition to making the evidence admissible, the fact that
27  the evidence does not show a dispute as to ownership of
    the Subject Loan is precisely what makes it probative to
28  this matter in the first place.

(SUF ¶¶ 9, 18-19; RFA ¶ 10; RFA of Genuiness of Documents ¶ 4; SAC ¶ 18; Osawld Decl. ¶ 6.)   The Petersens have never made payments on the Subject Loan to CP.  (RFA ¶ 11.)

At some point thereafter, Guaranty Bank closed and the FDIC was named as its receiver.  On August 21, 2009, Compass Bank acquired the Subject Loan, including the original HTFC Note and allonge, from the FDIC.  (SUF ¶¶ 10-11 ; Oswald Decl. ¶¶ 3-5, Exs. 1-3.)  Also included in Compass Bank's loan file is the Loan Modification Agreement executed by the Petersens and identifying Guaranty Bank as "Lender" and MERS as "mortgagee." (Oswald Decl. ¶ 6, Ex. 4; RFA of Genuiness of Documents ¶ 4.)

RoundPoint, the present loan servicer for the Subject Loan, maintains records indicating that, since April 1, 2008, the Petersens have been in default on the Subject Loan and have an unpaid principal balance of $1,778,009.00.  (Kernicky Decl. ¶ 3, Ex. 1.)

On January 30, 2009, MERS substituted ReconTrust Company, N.A. ("ReconTrust") as the trustee on the Deed of Trust securing the Petersens' obligations on the Subject Loan.  (SUF ¶ 25; Valerio Decl., Ex. 3; Compass Bank RJN, Ex. 9.)  A Trustee's Sale of the Property was

scheduled for October 27, 2009.  (SUF ¶ 27.)  One day before the sale was to occur, the Petersens executed a grant deed in favor of Carolina Petersen's mother, who immediately filed a petition for bankruptcy protection, thus preventing the foreclosure sale.  (Id. ¶¶ 27-31.) These events led Compass Bank to issue in error an IRS 1099C form in Guaranty Bank's name to the Petersens stating that $1,325,759.36 of the Petersens' debt had been canceled in light of the foreclosure sale, which had not actually taken place.  (Id. ¶¶ 32-33; SAC ¶ 23.)  The amount of debt purportedly canceled by the 1099C form was less than the total amount the Petersens owed on the Subject Loan.  (RFA ¶ 16.)  The Petersens accepted the 1099C form and did not dispute Guaranty Bank's authority to cancel debt on the Subject Loan.  (SUF ¶¶ 35, 39.)

Based on this 1099C form from Compass Bank/Guaranty Bank, the Petersens and CP on May 18, 2010, caused a full Reconveyance and Substitution of Trustee ("Reconveyance") in order to obtain further loan proceeds secured by the Property.  (RFA ¶¶ 12-17; Compass Bank RJN, Ex. 7.)  The Petersen Parties caused the Reconveyance to be recorded despite their lack of authority to do so, knowing the Subject Loan had not been paid off, and knowing that CP was not the foreclosure trustee and had not had any beneficial interest in the Subject Loan since October 30, 2007.  (RFA ¶¶ 7, 12-17; Compass Bank RJN, Ex. 7.)  The

10

Reconveyance is signed by Christopher Petersen in the capacity of President of CP.  (See Compass Bank RJN, Ex. 7 at 1.)

On February 2, 2009, ReconTrust recorded a Notice of Default stating that the Petersens were $110,877.15 in arrears on the Subject Loan; the Petersens received this Notice of Default sometime in February or March of 2009. (SUF ¶ 40; Compass Bank RJN, Ex. 8; Christopher Petersen Dep. at 408, ¶¶ 13-24 (attached to McKenna Decl., Ex. D).)  ReconTrust then recorded a Notice of Trustee's Sale on May 12, 2009.  (SUF ¶ 41.)

On January 7, 2011, the Petersens executed a new Deed of Trust on the Property to secure a loan from Strunzo in the amount of $227,500.00.  (Compass Bank RJN, Ex. 16.)

## II.  LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (citing Anderson, 477 U.S. at 256-57); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because summary judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact. See Avalos v. Baca, No. 05-CV-07602-DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.; Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). "[A]

summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Celotex</u>, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144.  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378, 380 (2007); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

# III.   DISCUSSION

The Court first considers Compass Bank's Motion for Partial Summary Judgment in case number 11-00871, as the Court's findings regarding that Motion may affect or moot resolution of the three other summary judgment motions.

**A.     Case Number 11-00871: Plaintiff Compass Bank's Motion for Partial Summary Judgment**

    **1.   Cancellation of Instruments, Setting Aside Reconveyance, Declaratory Relief, and Quiet Title Against the Petersen Parties and Strunzo**

The first four claims in Compass Bank's FAC hinge on questions of who had the authority at specific times to take certain actions.  The matter becomes increasingly complicated over time, with different parties making new promises and effecting new transactions under conflicting assumptions about their authority relative to the Subject Loan.  The Court determines here at what point, if any, the parties' narratives diverge due to a disjuncture between their interpretation of the law, rather than a genuine dispute between their assertions of the facts.

The relevant facts are quite simple as to Compass Bank's first four claims alleged in its FAC: As of October 30, 2007, the Subject Loan, _i.e._, the original HTFC note and the original Deed of Trust against the Property, had transferred from CP to HTFC, as per the parties' original agreement.  As of that transfer, CP has not had a beneficial interest in the Subject Loan and

14

1 | neither the Petersens nor CP have possessed the original
2 | HTFC note.  The copies of the original HTFC note, Deed of
3 | Trust, and allonge submitted as evidence by Compass Bank
4 | are genuine.
5 |
6 |    Compass Bank first requests the Court order
7 | cancellation of the Reconveyance of the Subject Loan as
8 | of May 18, 2010, the date it was recorded in the San
9 | Bernardino County Official Records.  (See FAC ¶¶  31-39;
10 | Compass Bank RJN, Ex. 7.)
11 |
12 |    A deed of trust is a lien on real property. Monterey
13 | S.P. Partnership v. W.L. Bangham, Inc., 49 Cal.3d 454,
14 | 460 (1989).  Reconveyance of a deed of trust extinguishes
15 | the lien and transfers the title and authority from the
16 | prior trustee named in the deed of trust to the new
17 | trustee.  See Cal. Civ. Code §§ 2939, 2941(b)(1); First
18 | Fidelity Thrift & Loan Ass'n v. Alliance Bank, 60 Cal.
19 | App. 4th 1433, 1441 (1998); Dimock v. Emerald Properties,
20 | 81 Cal. App. 4th 868, 871 (2000).
21 |
22 |    The Court may order cancellation of an invalid
23 | written instrument that is void or voidable.  Cal. Civ.
24 | Code §§ 3412, et seq.  "Where the beneficiary of a deed
25 | of trust recorded a document that substituted a new
26 | trustee for the former trustee, the new trustee ha[s]
27 | sole power to convey the property, and therefore the
28 |

former trustee's conveyance of the property to a new buyer after a foreclosure sale [is] void. <u>Dimock</u>, 81 Cal. App. at 868.

CP did not have authority to cause the Reconveyance and substitution of trustee to be issued and recorded, and CP and the Petersens knew that the Subject Loan had not been paid off, as would be required to cause a Reconveyance to issue and extinguish the lien. <u>See Alliance Mortgage Co. v. Rothwell</u>, 10 Cal. 4th 1226, 1235 (1995). CP had authorized MERS to act as nominee for the beneficiary under the Subject Loan (RFA-CP ¶ 16), and CP had no beneficial interest in the Subject Loan as of October 30, 2007. Thus, because none of the Petersen Parties had the authority to issue the Reconveyance, the Court finds the Reconveyance void and cancels the May 18, 2010, Reconveyance as of that date of recordation.

Cancellation is proper here despite the post-Reconveyance Strunzo loan because of the Court's finding that the Reconveyance is void and not just voidable. "Under California law, a bona fide purchaser for value takes title free and clear of an improperly reconveyed deed of trust, so long as the reconveyance is voidable and not void. . . . If the reconveyance was void, it would have no effect even against a subsequent bona fide

1   purchaser." <u>Schiavon v. Arnaudo Bros.</u>, 84 Cal. App. 4th
2   374, 376, 378 (2000).

3

4       Based on the facts set forth above, the Reconveyance
5   here is equivalent in legal status to a forged
6   reconveyance.  In <u>Wutzke v. Bill Reid Painting Serv.,</u>
7   <u>Inc</u>, 151 Cal. App. 3d 36 (1984), a party forged a
8   reconveyance to clear the encumbered property of debt and
9   "then borrowed money from a third party, who knew nothing
10  of the fraud, and executed a promissory note secured by a
11  new first deed of trust on the property." <u>Schiavon</u>, 84
12  Cal. App. at 379 (citing <u>Wutzke</u>, 151 Cal. App.).
13  "Although the law protects innocent purchasers and
14  encumbrancers, 'that protection extends only to those who
15  obtained good legal title. . . . [A] forged document is
16  void *ab initio* and constitutes a nullity; as such it
17  cannot provide the basis for a superior title as against
18  the original grantor.'" <u>Id.</u> (quoting <u>Wutzke</u>, 151 Cal.
19  App. at 43).

20

21      Here, the unauthorized Reconveyance was invalid and
22  the legal equivalent of the forged document in <u>Wutzke</u>.
23  Even if the Court did find the Reconveyance voidable
24  instead of void, though, the uncontroverted evidence
25  demonstrates that Strunzo had actual notice that the
26  Reconveyance was unauthorized. <u>Cf.</u> <u>First Fid. Thrift &</u>
27  <u>Loan Ass'n v. Alliance Bank</u>, 60 Cal. App. 4th 1433, 1441
28

1  (1998) (emphasis in original) ("If a trustee executes an
2  unauthorized reconveyance and the trustor subsequently
3  conveys the property, a grantee *who does not have notice*
4  of the trustee's lack of authority receives title free
5  and clear of the lien."). The uncontroverted evidence
6  shows that Strunzo had "knowledge of circumstances which,
7  upon reasonable inquiry, would lead to" the fact that the
8  Reconveyance was unauthorized. <u>Id.</u> at 1443. Christopher
9  Petersen, listed as "borrower" on the Subject Loan,
10 signed the Reconveyance as President of CP, the purported
11 "lender" being substituted as the "trustee." That fact
12 combined with the clear evidence of the Reconveyance's
13 invalidity that would have been discovered upon a
14 reasonable inquiry counters Strunzo's claim to protection
15 as a bona fide encumbrancer. Thus, on the undisputed
16 facts, Strunzo could not prevail even if the Court found
17 the Reconveyance voidable and not void *ab initio*.

18

19     For the foregoing reasons, the Court grants summary
20 judgment in favor of Plaintiff Compass Bank on its claim
21 for cancellation of the Reconveyance as void *ab initio*,
22 as well as on its claim for setting aside the recordation
23 of the Reconveyance as of the date of the recordation.
24 (FAC ¶¶ 40-44.)

25

26     Compass Bank also seeks a declaration "that the
27 Reconveyance is void and of no force or effect
28

1   whatsoever, and Defendants' interest in the Property, if

2   any, are subordinate to Plaintiff's beneficial interest

3   in the HTFC [Deed of Trust]." (FAC ¶ 50.)  Where subject

4   matter jurisdiction is solely based on diversity, federal

5   law determines whether there is a controversy before the

6   Court within the purview of the Declaratory Judgment Act,

7   28 U.S.C. § 2201, and state law creates and determines

8   the substantive rights and duties that may vindicated

9   through declaratory relief.  See St. Paul Fire and Marine

10  Ins. Co. v. Weiner, 606 F.2d 864, 867 (9th Cir. 1979);

11  Hunt v. State Farm Mut. Auto. Ins. Co., 655 F. Supp. 284,

12  286 (D. Nev. 1987); MacMillan-Bloedel, Inc. v. Firemen's

13  Ins. Co. of Newark, N.J., 558 F. Supp. 596, 598 (S.D.

14  Ala. 1983).  The Court finds the controversy at issue

15  justiciable under the Declaratory Judgment Act and finds

16  Compass Bank's claim for declaratory relief warranted

17  under Cal. Civ. Code § 1060.[8]  Thus, the Court grants

18  summary judgment in favor of Compass Bank on its claim

19  for declaratory judgment.

20

21  _____

22      [8] Cal. Civ. Code § 1060 states,
        Any person interested under a written instrument
23      . . . or who desires a declaration of his or her
        rights or duties with respect to another, or in
24      respect to . . . property, . . . may, in cases of
        actual controversy relating to the legal rights
25      and duties of the respective parties, bring an
        original action . . . for a declaration of his or
26      her rights and duties in the premises, including
        a determination of any question of construction or
27      validity arising under the instrument or contract.

28

1    Compass Bank's final claim for equitable relief
2  against the Petersen Parties and Strunzo in this Motion
3  is for quiet title.  Upon invaliding the Reconveyance
4  and its recordation as void, the Court resolves the
5  parties' adverse claims to beneficial interest in the
6  Subject Loan by granting summary judgment on Compass
7  Bank's quiet title claim in favor of Compass Bank and
8  against the Petersen Parties and Strunzo.  (FAC ¶¶ 55-
9  57.)

10

11       **2.   Fraud Against the Petersen Parties**
12    Plaintiff Compass Bank claims that, as a result of
13  the Petersen Parties' "fraudulent conduct, Plaintiff  has
14  suffered damages via the inability to foreclose on the
15  Property and the potential loss of the Property."  (FAC ¶
16  61.)
17    For the Court to grant summary judgment in favor of
18  Compass Bank on its fraud claim, Compass Bank must prove
19  that the Petersen Parties (1) falsely represented or
20  concealed a material fact; (2) knew their representation
21  was false; (3) made the representation with intent to
22  induce Compass Bank to act on it; (4) did induce Compass
23  Bank to act on it; and (5) inflicted damages on Compass
24  Bank due to Compass Bank's reliance upon the Petersen
25  Parties' false representations.  See Alliance Mortgage
26  Co., 10 Cal. 4th at 1239; Molko v. Holy Spirit Ass'n, 46
27  Cal. 3d 1092, 1108 (1988).

28

The Petersen Parties falsely represented that they had authority to cause the full Reconveyance, knowing at the time that the Subject Loan had not been paid.  In the several years before causing the Reconveyance to issue, the Petersen Parties had transferred the original note to HTFC, made payments on the Subject Loan to HTFC and Guaranty Bank, attempted a short sale to Guaranty Bank, executed a Loan Modification Agreement with Guaranty Bank, and accepted the mistakenly sent 1099C form from Guaranty Bank without disputing Guaranty Bank's authority to cancel the Petersen's debt on the Subject Loan.  These actions and omissions between October 30, 2007, and May 18, 2010 (the date of the Reconveyance), lulled Compass Bank into believing that their claim to and security in the Subject Loan was not disputed.  This allowed the Petersens to issue the Reconveyance improperly, create the appearance of having cleared title to the Property, and perpetuate their scheme of, in their own words, using the Property "as a virtual ATM machine." (Petersen Parties Opp'n at 2.)  As a result of this fraudulent misconduct, Compass Bank has been unable to foreclose on the Property while the Petersens have exploited the invalid Reconveyance to borrow more money against the Property and continue their enjoyment of the Property. Based on the foregoing facts, Compass Bank has proved the fraud elements of (1) false representation; (2) knowledge

of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage as Compass Bank alleges against the Petersen Parties in its FAC. See Molko, 46 Cal. 3d at 1108.

Compass Bank's request for punitive damages is also warranted. "Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations." Alliance Mortgage Co, 10 Cal. 4th at 1241. Further, California courts have found punitive damages to be particularly justified in cases of "[f]raudulent misrepresentations by real estate brokers." Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 790 (1979).

In this case, in addition to the clear evidence of the Petersens' intent to deceive and to, as they admit (RFA ¶¶ 13, 20), use that deception to obtain further loan proceeds, it is also evident that the Petersens are sophisticated parties who were well aware of their fraudulent actions at all times. Christopher Petersen, according to the Petersens, is a "gullible youngster." (Petersen Parties Opp'n at 1.) Christopher Petersen, according to the uncontroverted evidence, is a loan broker and the President and Chairman of CP, a company that originates mortgage loans for commercial and residential real estate, buys and sells properties, and offers loss mitigation services by negotiating with

clients' lenders for short sale or loan modification.
(Declaration of Christopher Petersen, Vol. I, 18:7-
19:23.)  He and his wife, Carolina Petersen, are the only
two shareholders and employees of CP.  (Id. at 18:14-17,
22:16-20.)

The uncontroverted facts show that the Petersens had
the intent to defraud from the time they arranged the
dubious transaction by which their company, CP, "lended"
them over $1.75 million.  Therefore, Compass Bank has met
its burden proving it is entitled to summary judgment on
its fraud claim against the Petersen Parties and is
entitled to compensatory and punitive damages.

**3.  Slander of Title Against the Petersen Parties**

"Slander of title occurs when there is an
unprivileged publication of a false statement which
disparages title to property and causes pecuniary loss."
Stalberg v. W. Title Ins. Co., 27 Cal. App. 4th 925, 929
(1994).

In Seeley v. Seymour, 190 Cal. App. 3d 844, 859,
(1987), the court stated "that it is the reasonably
foreseeable effect upon prospective purchasers or
lessees, not the strictly legal effect on title of a
recorded instrument, which is the gravam[e]n of a cause
of action for disparagement of title under California

law."   In that case, the court found in favor of the
plaintiff where the defendant recorded a legally invalid
"Memorandum of Agreement" to lease real property because
the memorandum "was reasonably understood by third
parties as an announcement that the purported lessee was
claiming a 60-year leasehold interest in the premises,
and it was so read to the property owner's damage."   Id.

Here, the damage caused by the Petersen Parties'
slander of title consists of the loss of Compass Bank's
ability to initiate a foreclosure sale and the cost to
Compass Bank of clearing title on the Property.   See
Glass v. Gulf Oil Corp., 12 Cal. App. 3d 412, 424 (1970)
(stating that "impairment of vendibility and cost of
clearing title" constitute pecuniary damages in a slander
of title action).   "Accordingly, it is well-established
that attorney fees and litigation costs are recoverable
as pecuniary damages in slander of title causes of action
when . . . litigation is necessary to remove the doubt
cast upon the vendibility or value of plaintiff's
property."   Sumner Hill Homeowners' Ass'n, Inc. v. Rio
Mesa Holdings, LLC, 205 Cal. App. 4th 999, 1030 (2012).
The uncontroverted facts here demonstrate that the
Petersen Parties fraudulently recorded an instrument to
cloud Compass Bank's title and cause the loss of Compass
Bank's security on the Subject Loan.   Thus, the Court

1  grants summary judgment in favor of Compass Bank on its

2  slander of title claim.

3

4  **4.  Defendants' Affirmative Defenses**

5      Defendants put forth several affirmative defenses

6  that are either factually untenable[9] or legally

7  irrelevant[10] and are thus disregarded here.  Defendant

8  Strunzo, though, also puts forth sound equitable defenses

9  that do warrant the Court's consideration.  Namely,

10  Strunzo argues that Compass Bank is barred from equitable

11  relief on its first four FAC claims on account of the

12  equitable doctrines of unclean hands and waiver. (Strunzo

13  Opp'n at 15.)

14

15      An unclean hands defense might carry significant

16  weight were this action initiated by HTFC, which, knowing

17  it was unlicensed to lend in California and thus could

18  not do so legally, colluded with Christopher Petersen to

19  hatch the questionable scheme that allowed the Petersens

20  to lend $1.76 million to themselves.  Nevertheless, since

21  the transaction between HTFC and the Petersen Parties,

22

23  ─────────────

24      [9] _E.g._, the Petersen Parties argue that Compass Bank
    cannot enforce the HTFC Note because it is not the
    rightful holder, though the Petersen Parties have

25  admitted facts to the contrary.  (_See_ RFA ¶¶ 6-9.)

26      [10] _E.g._, the Petersen Parties argue that the statute
    of limitations on a breach of oral contract claim has

27  passed.  (Petersen Parties Opp'n at 15.)  Compass Bank is
    not moving for summary judgment on any breach of contract

28  claims.

the Subject Loan has passed from HTFC to Guaranty Bank to the FDIC to Compass Bank.  Without a specific allegation of Compass Bank's wrongdoing, Compass Bank is simply too far removed from HTFC's ethically questionable actions to bar Compass Bank from asserting its interest in the Subject Loan.  Further, regardless of the original transaction's legitimacy, the consistently ignoble conduct of the Petersen Parties since that transaction overwhelmingly supports a finding that if any party is barred by doctrines of equity, it is the Petersens.

Similarly, Strunzo's waiver defense also fails, as waiver is a doctrine far more aptly applied to the Petersens than Compass Bank.  Strunzo claims that Compass Bank waived the right to enforce the Subject Loan "by issuing an IRS Form 10[9]9-C stating the debt had been canceled." (Strunzo Opp'n at 16.)  Putting aside the myriad ways that the Petersen Parties waived their right to assert possession of the Subject Loan, including by accepting the 1099C form from Guaranty Bank without dispute, the 1099C form was mistakenly issued only because the Petersens transferred interest in the Property to Carolina Petersen's mother in a scheme to misuse the bankruptcy laws and block the foreclosure sale.  (See RFA ¶ 19.)  More fundamentally, though, the 1099C form stated an amount less than the total amount the Petersens owed on the Subject Loan, which by itself

1  would defeat a claim that Compass Bank waived its right
2  to enforce the Subject Loan.

3

4      Therefore, the Court finds the affirmative defenses
5  submitted by Defendants as to Compass Bank's Motion for
6  Summary Judgment unavailing.

7

8  **B.   Defendant Strunzo's Motion for Summary Judgment**[11]

9      As the Court has found Plaintiff Compass Bank
10  entitled to summary judgment on the four claims against
11  Strunzo in the FAC, the Court must deny Strunzo's motion
12  for summary judgment as moot.  Specifically, as
13  reiterated above, Strunzo can show no triable issues of
14  fact because the Reconveyance is void and, even were it
15  not void, Strunzo was on notice as to the unauthorized
16  Reconveyance, thus defeating Strunzo's claim that it is a
17  bona fide encumbrancer.

18

19

20

21  _____

22      [11] The uncontroverted facts set forth above as to
    Plaintiff Compass Bank's Motion determine the outcome of
23  the remaining three summary judgment motions before the
    Court and are derived from the same evidence, except to
24  the extent that the Requests for Admissions propounded to
    the Petersen Parties and deemed admitted under Rule
25  36(a)(3) are not binding as to facts involving Defendant
    Strunzo.  Accord Riberglass, Inc. v. Techni-Glass Indus.,
26  Inc., 811 F.2d 565, 566 (11th Cir. 1987).  The Court
    does, however, rely on the Petersen Parties' admissions
27  regarding events to which Strunzo was not a party or
    which preceded Strunzo's involvement in this matter.

28

**C.   Defendants Christopher Petersen, Carolina Petersen, and CP's Motion for Summary Judgment in Case Number 11-00871; Defendant Compass Bank's Motion for Summary Judgment in Case Number 11-01201**

Based on the Court's finding that Plaintiff Compass Bank is entitled to summary judgment on its FAC's first six claims, the Court must deny the Petersen Parties' Motion for Summary Judgment in case number 11-00871.  On the same grounds, the Court must grant summary judgment to Defendants Compass Bank and Roundpoint in case number 11-01201 as to Plaintiffs Petersens' claim for declaratory judgment. (SAC ¶ 27-31.)

In case number 11-01201, the Petersens also make equitable claims for accounting, unjust enrichment, and equitable estoppel, all of which are based on Compass Bank's mistaken issuance of the 1099C form in Guaranty Bank's name.  (SAC ¶¶ 32-33 (accounting); 34-35 (unjust enrichment); 36-40 (equitable estoppel).)

In addition to the uncontroverted facts already discussed, the Court finds it uncontroverted that the Petersens did not suffer any adverse tax consequences as a result of the issuance of the 1099C form.  (RFA ¶ 18.)

Defendant Compass Bank can prevail on its Motion for Summary Judgment by showing that, "under the governing law, there can be but one reasonable conclusion as to the

verdict." <u>Anderson</u>, 477 U.S. at 250.   Compass Bank has met this burden here.

Under California law and longstanding principles of equity, "No one can take advantage of his own wrong." Cal. Civ. Code § 3517.   A further maxim of equity is that a plaintiff "who engaged in his own reprehensible conduct in the course of the transaction at issue must be denied equitable relief because of unclean hands." <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352, 360 (1995).   The uncontroverted facts in this and the related case demonstrate the Petersens' wanton, egregious, and intentionally fraudulent misconduct, some of which appears designed to provide the legal cover they now seek.   Based on the above uncontroverted facts and equitable principles, the Court finds the Petersens' reprehensible conduct over the course of several years regarding the Subject Loan now bars them from seeking equitable relief as to the Subject Loan, asserting rights as to the Subject Loan, and challenging Compass Bank's beneficial interest in and right to enforce the Subject Loan.

Thus, the Court grants summary judgment to Defendants Compass Bank and Roundpoint in case number 11-01201 and dismisses all claims set forth in Plaintiffs' Second Amended Complaint.

**IV.   CONCLUSION**

For the foregoing reasons, the Court (1) GRANTS Plaintiff Compass Bank's Motion for Partial Summary Judgment on its first six claims in the FAC in case number 11-00871; and (2) GRANTS Defendants Compass Bank and Roundpoint's Motion for Summary Judgment on all of Plaintiffs' claims in case number 11-01201.  The Court DENIES Strunzo's Motion for Summary Judgment and the Petersen Parties' Motion for Summary Judgment in case number 11-00871.

Dated:  August 10, 2012

VIRGINIA A. PHILLIPS
United States District Judge